

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CROW CREEK SIOUX TRIBE, and the CROW CREEK HOUSING AUTHORITY, Plaintiffs, vs. SHAUN DONOVAN, in his capacity as the Secretary of the DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and RODGER J. BOYD, in his capacity as Deputy Assistant Secretary for Native American Programs, Defendants. | CIV. 09-3021-RAL<br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

The Defendants have filed Defendant's Second Motion to Dismiss (Doc. 14), arguing that the case should be dismissed for lack of jurisdiction and the failure of Plaintiffs' Complaint to state a claim upon which relief may be granted. In considering such a motion to dismiss, this Court must "assume the truth of the facts as alleged in [the] Complaint." Fitzgerald v. Barnstable Sch. Comm., -- U.S. --, 129 S. Ct. 788, 792, 172 L. Ed.2d. 582 (2009). Even taking the plead allegations of Plaintiffs' Complaint as true, for the reasons explained below, Plaintiffs' Complaint fails to state a viable claim, so Defendants' Second Motion to Dismiss is granted.

### I. Facts.

Plaintiff Crow Creek Sioux Tribe ("the Tribe") is a federally recognized Native

1

American Indian tribe. Plaintiffs' Complaint ("Complaint") at ¶ 5. The Tribal Council is the governing body of the Tribe, is composed of six elected members, and is led by the chairman of the Tribal Council.

Plaintiff Crow Creek Housing Authority ("Tribal Housing Authority") is a non-profit corporation chartered by the Tribe. Id. at ¶ 6. A seven member Board of Commissioners manages the business and affairs of the Tribal Housing Authority, which is considered an agency of the Tribe. Id. at ¶ 9. The Tribal Council appoints the members of the Board of Commissioners. Id. at ¶ 10 and at Exhibit A thereto. The members of the Board of Commissioners serve two-year terms, and four of the seven commissioners must be present to constitute a quorum for transaction of business of the Tribal Housing Authority. Id. at ¶ 11-12. The Tribal Council has the authority to fill any vacancy occurring in the Board of Commissioners of the Tribal Housing Authority. Id. at 15. The Board of Commissioners itself may fill vacancies caused by "death, resignation, removal, disqualification or otherwise." Id. at 17.

Defendant Shaun Donovan is the secretary of the Department of Housing and Urban Development ("HUD"). Id. at ¶ 7. Defendant Rodger J. Boyd is a deputy assistant secretary for HUD's Native American Programs. Id. at ¶ 8.

In March of 2009, three of the seven members of the board of commissioners of the Tribal Housing Authority were Norman Thompson, Sr., Randy Shields, Sr., and Thomas Thompson. Id. at 24. Those same three individuals presently are also members of the Tribal Council. Id. at 25. In March of 2009, HUD notified Norman Thompson, Sr., Randy Shields, Sr., and Thomas Thompson of their immediate suspension from participation and

procurement and nonprocurement transactions with HUD. Id. at ¶ 24 and at Exhibit C thereto. The suspensions arose out of the indictment in this court of those three individuals. Id. at Exhibit C; see also United States of America v. Archie Baumann, Norman Thompson, Sr., Randy Shields, and Thomas Thompson, CR 08-30114 at Doc. 32 and 114 therein. These three Tribal Council and Board of Commissioner members -- Norman Thompson, Sr., Randy Shields, Sr., and Thomas Thompson (hereinafter "the indicted individuals") -- are charged with multiple counts of bribery in connection with a series of transactions of the Tribe involving more than $5,000. CR 08-30114 at Doc. 32. In addition, the indicted individuals also are charged with taking harmful actions toward Brandon Sazue, the tribal chairman, with the intention of retaliating against Sazue for providing truthful information to law enforcement with regard to the charges against them. Id.

The HUD letters base the suspensions of the indicted individuals on 2 C.F.R. §§ 180.700 and 180.705. Complaint at Exhibit C. According to the HUD letter, the suspension of the indicted individuals was to protect the public interests and was temporary pending the outcome of the criminal proceedings or any related debarment action. Id. The charges against the indicted individuals are scheduled for jury trial beginning April 6, 2010. CR 08-30114 at Doc. 230.

The HUD letters advised each indicted individual that, to contest the suspension, they can submit a written argument or request an informal hearing. Complaint at Exhibit C. The letters provide specific notice that, under 2 C.F.R. § 180.730, the written suspensions must contain certain information, and further advise the indicted individuals of their right to a hearing. Id. at Exhibit C.

3

The guidelines for when a federal agency should consider government-wide debarment and suspension are found at 2 C.F.R. part 180. The HUD adopted these regulations in 2 C.F.R. § 2424.10. The suspending official may impose suspension when there is an indictment of an offense listed under subpart 180.800(a). See 2 C.F.R. § 180.700(a). Under subpart 180.800(a)(3), offenses justifying suspension include bribery and obstruction of justice, as well as "the commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects your present responsibility." 2 C.F.R. § 180.800(3)(4). HUD did not engage in consultation with the Tribe or Tribal Council prior to the suspension of the indicted individuals. Complaint at ¶ 34.

On June 29, 2009, Tribal Council vice chairman Randy Shields, Sr., one of the individuals under indictment and suspended by HUD, sent a formal request to HUD on behalf of the Tribe invoking the tribal consultation policy of HUD. Id. at ¶ 36 and Exhibit E thereto. The letter requested formal government-to-government consultation to discuss all issues relating to the suspension of the three individuals. Id. The topics proposed for discussion included whether HUD's suspensions illegally infringed on the Tribe's right to self governance, whether HUD improperly imposed the suspension without first consulting with the Tribal Council, whether HUD should grant an exception to allow participation of the suspended individuals in selecting their successors, and whether HUD should reverse and vacate the suspensions pending meaningful consultation. Id. at ¶ 36 and Exhibit E thereto.

On July 29, 2009, Defendant Boyd, HUD's deputy assistant secretary for Native American Programs, responded to Mr. Shields, denying the request for government-to-

government consultation. Id. at ¶ 37 and Exhibit F. The letter explained that the tribal consultation policy "applies when any proposed policies, programs or actions are identified by HUD as having a substantial direct effect on an Indian tribe." The HUD letter then explained that HUD did not view the suspension of three members of the Board of Commissioners of the Tribal Housing Authority to qualify as an action with a substantial direct effect on the Tribe for purposes of the tribal consultation policy. Id. at ¶ 38-39 and at Exhibit F thereto. The HUD letter referred to paragraph X of the HUD's tribal consultation policy, which stated that the policy is "not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person." Id. at Exhibit F.

The Tribe and Tribal Housing Authority brought this Complaint alleging two counts of "arbitrary agency action," and "failure to observe procedure required by law." Id. at ¶ 41-56. Reading the Complaint liberally to favor the Plaintiffs in the context of a motion to dismiss, the Complaint pleads claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702-704, and for a declaratory judgment under 28 U.S.C. § 2201-02. The gravamen of Plaintiffs' Complaint is that HUD acted improperly in failing to consult with the Tribe under the tribal policy. Id. The Defendants' Second Motion to Dismiss asserts that the Court lacks jurisdiction because neither the Declaratory Judgment Act nor the APA, under these circumstances, waives sovereign immunity, and, secondarily, Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

**II. Discussion.**

### A. Sovereign Immunity Argument.

The Declaratory Judgment Act establishes the remedy of declaratory judgments as follows:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

The Declaratory Judgement Act is not an independent grounds for subject matter jurisdiction of the court. As the Supreme Court of the United States has stated:

> [T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in federal courts but did not extend their jurisdiction. . . . The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction - the limited subject matters which alone Congress had authorized the district courts to adjudicate - were not impliedly repealed or modified.

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950); see also Western Cas. Co. v. Herman, 405 F.2d 121, 124 (8th Cir. 1968). In short, "the declaratory judgment statute is strictly remedial in nature and does not provide a separate basis for subject matter jurisdiction." First Federal Sav. & Loan Ass'n of Harrison, Ark. v. Anderson, 681 F.2d 528, 533 (8th Cir. 1982). Thus, the declaratory judgment action "does not provide an independent basis for federal jurisdiction." Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc., 977 F.2d 1224, 1227 (8th Cir. 1992).

The Plaintiffs also invoked the APA as a basis for jurisdiction. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Thus, "a basic presumption of judicial review of agency action is embodied in the APA." Lincoln v. Vigil, 508 U.S. 182, 190 (1993).

In limited circumstances, judicial review is not applicable to agency action. Under 5 U.S.C. § 701(a), judicial review does not extend when "statutes preclude judicial review," or "agency action is committed to agency discretion by law." 5 U.S.C.§ 701(a)(1) and (2). The Defendants argue that denial of consultation under the tribal consultation policy is not subject to judicial review, and thus there is no waiver of sovereign immunity under the APA. The Court notes that there are circumstances where a refusal to consult with a tribe prior to agency action is subject to judicial review. See Yankton Sioux Tribe v. Kempthorne, 442 F. Supp. 2d 744, 783 (D.S.D. 2006). Because this case is subject to dismissal for failure to state a claim, the Court need not reach or resolve the question of whether review of HUD's denial of consultation under these circumstances is within the waiver of sovereign immunity found in the Administrative Procedure Act.

**B. Failure to State a Claim.**

The Court is mindful that dismissal for failure to state a claim is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Such a situation exists with respect to Plaintiffs' Complaint because the causes of action focus wholly on HUD's refusal to consult with the Tribe under HUD's tribal consultation policy and because that tribal consultation policy does not permit a cause of action.

Paragraph X of the tribal consultation policy at issue states that the policy is "not intended to and does not create any right to administrative or judicial review or any other right or benefit or trust responsibility, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other persons." Complaint at ¶ 40 and Exhibit F thereto; X. "General Provisions," 66 Fed. Reg. 49784, 49786 (September 28, 2001). In a similar case, this district court, and the United States Court of Appeals for the Eighth Circuit on appeal, determined that no claim can be stated under a similarly worded tribal consultation policy. Yankton Sioux Tribe v. U.S. Dept. of Health & Human Services, 496 F. Supp. 2d 1044, 1057 (D.S.D. 2007), aff'd 533 F.3d 634, 643 (8th Cir. 2008). In Yankton Sioux Tribe, one of the claims asserted by the Plaintiffs was based on the failure of the Department of Health and Human Services ("HHS") to consult with the tribe under HHS's tribal consultation policy. Yankton Sioux Tribe, 496 F. Supp. 2d at 1057. As with the case here, the Plaintiffs in Yankton Sioux Tribe alleged that the tribal consultation policy created a justified expectation that the Tribe would receive a meaningful opportunity to provide its views before the agency action occurred. Id. at 1057. The HHS policy specifically provided: "Nothing in the Policy creates a right of action against the Department for failure to comply with this Policy." Id. The district court in Yankton Sioux Tribe dismissed the claim based on the tribal consultation policy, both because of the language of the policy and because the policy came into effect after the decision challenged by the Plaintiffs have been made. Id.

On appeal to the United States Court of Appeals for the Eighth Circuit, the court noted the new claim that HHS's "decision failed to comply with the requirements of a tribal

consultation policy." Yankton Sioux Tribe, 533 F.3d at 643. The Eighth Circuit then noted, "[t]hat policy expressly states, however, that '[n]othing in the Policy creates a right of action against the Department [HHS] for failure to comply with this Policy.'" Id. at 643.

In this case, the HUD policy is substantially similar to the HHS policy in making clear that the tribal consultation policy "does not create any right to administrative or judicial review . . . enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other persons." As with respect to the HHS policy in Yankton Sioux Tribe, a claim based on HUD's refusal to consult under the tribal consultation policy does not state a claim. Simply put, the express language of the HUD tribal consultation policy makes clear that it creates no enforceable right or cause of action.

The claims made under the Declaratory Judgment Act and APA by the Plaintiffs in this case relate solely to the decision of HUD not to consult with the Tribe prior to the suspensions of the three indicted individuals from contracting with HUD and refusal to consult about the decision thereafter. That is, the only claim made here in this Complaint is based on the tribal consultation policy. The terms of the tribal consultation policy are unambiguous in making clear that no right of judicial review arises out of the tribal consultation policy. Accordingly, the Complaint fails to state a claim upon which relief may be granted.

### III. Conclusion.

For the reasons contained herein, it is

ORDERED that Defendant's Second Motion to Dismiss (Doc. 14) is granted. It is further

ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 18) is rendered moot and therefore denied.

Dated March 16, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE